UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
RAHUL MASIH,                            :    14 Civ. 0928 (JCF)
                                        :
            Petitioner,                 :    MEMORANDUM
                                        :    AND  ORDER
    - against -                         :
                                        :
OSCAR AVILES, in his official           :
capacity as Warden of Hudson            :
County Jail, CHRISTOPHER                :
SHANAHAN, in his official capacity      :
as New York Field Office Director       :
for U.S. Immigration and Customs        :
Enforcement, RAND BEERS, in his         :
official capacity as Acting             :
Secretary of Homeland Security,         :
ERIC HOLDER, in his official            :
capacity as Attorney General of the:
United States, and the U.S.             :
DEPARTMENT OF HOMELAND SECURITY,        :
                                        :
            Respondents.                :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

    Since January 2014, United States Immigration and Customs
Enforcement ("ICE") has held petitioner Rahul Masih in detention.
It has done so pursuant to a statute that requires the Government
to detain any alien who is subject to deportation on the basis of
having been convicted of two or more crimes involving moral
turpitude.  8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(ii).  Mr.
Masih contends that he is not properly held under that section, and
seeks a bond hearing pursuant to 8 U.S.C. § 1226(a), the general
provision governing detention of removable aliens.  He argues that
(1)  detention under section 1226(c)(1)(B) is authorized only for
an alien who has been released from a custodial sentence imposed
for the conviction that makes him removable, and he did not receive

a custodial sentence for any of the crimes that make him removable, and (2) detention under that section is authorized only for an alien who is detained at or around the time that he is released from criminal custody, whereas Mr. Masih was not detained until years after his convictions for the offenses that made him removable.  Because Mr. Masih's first argument correctly interprets the statute, I conditionally grant the writ on that ground.[1]

Factual Background

        The relevant facts are largely undisputed.  Mr. Masih immigrated to the United States from India in 1991.  ([Proposed] First Amended Petition for Writ of Habeas Corpus ("Am. Pet."), attached as Exh. 1 to Motion to Amend Petition for Writ of Habeas Corpus, at 3).[2]  He is not a United States citizen.  (Am. Pet. at 3).  In 1998 and 2005, he pled guilty to two crimes involving moral turpitude; however, he received no jail time as a result of the convictions.[3]  (Am. Pet. at 7).  Instead, he was sentenced to a

_____

    [1] This case was referred to me by consent of the parties for all purposes up to and including entry of judgment pursuant to 28 U.S.C. § 636(c).

    [2] The petitioner has filed a motion to amend the petition to add Yvette Tay-Taylor, Assistant Field Office Director for the Office of Detention and Removal for U.S. Immigration and Customs Enforcement as a respondent.  The motion is granted, and I will therefore refer hereafter to the amended petition.

    [3] There appears to be some dispute about whether Mr. Masih was detained after his arrests for any of these three crimes.  The Government has submitted two arrest reports purportedly from the New Rochelle Police Department which indicate that Mr. Masih was held following his arrest on November 14, 2003 and released on his own recognizance following his arrest on May 18, 2004.  (Arrest Report dated Nov. 14, 2003, attached to Letter of Christopher Connolly dated April 17, 2014 ("Connolly Letter"); Arrest Report dated May 18, 2004, attached to Connolly Letter).  The petitioner

one-year conditional discharge on the 1998 conviction and three years of probation on the two 2005 convictions.  (Am. Pet. at 7; Conditions of Conditional Discharge dated Dec. 11, 1998, attached as Exh. 3 to Memorandum of Law in Support of Petition for Habeas Corpus ("Pet. Memo."); Certificate of Disposition dated Dec. 5, 2013, attached as Exh. 4 to Pet. Memo.; Certificate of Disposition dated Dec. 5, 2013, attached as Exh. 5 to Pet. Memo.).  In January 2014, ICE detained him without a bond hearing pursuant to section 1226(c).  (Notice of Custody Determination dated Jan. 15, 2014, attached as Exh. 8 to Return to Habeas Petition ("Return")).  Proceedings are now underway to effect his removal.  (Notice of Hearing in Removal Proceedings dated April 1, 2014, attached as Exh. 10 to Return).

Discussion

A.   Legal Standards[4]

This case requires me to interpret part of the Immigration and Naturalization Act (the "INA"), which is administered by the Board of Immigration Appeals (the "BIA").  See Chery v. Ashcroft, 347

---

objects, noting that the records "lack all indicia of reliability," as they are "neither signed, nor authenticated/certified, and it is impossible to tell when in fact they were actually created." (Letter of Michael Z. Goldman dated April 17, 2014).  As explained below, whether Mr. Masih was detained following his arrests would not change the outcome here, and it is therefore unnecessary to decide the admissibility of the records.

[4] It is clear that the Court has jurisdiction over this petition.  See, e.g., Straker v. Jones, __ F. Supp. 2d __, __, 2013 WL 6476889, at *3 (S.D.N.Y. 2013).  Exhaustion of administrative remedies is similarly not at issue, as the respondents have not raised it as a defense and the petitioner's failure to exhaust would, in any case, be excused as futile.  Id. at __, 2013 WL 6476889, at *15.

F.3d 404, 407 (2d Cir. 2003). The statute includes two subsections directed at the detention of potentially removable aliens. Section 1226(a) provides that, pursuant to a warrant, immigration officials[5] may arrest an alien and, pending a decision on whether the alien is removable, may detain him, release him on bond, or release him on conditional parole. 8 U.S.C. § 1226(a). Section 1226(a) thus contemplates that detained aliens will be provided a bond hearing. Section 1226(c), on the other hand, applies to only a subset of aliens -- denominated "criminal aliens" -- and denies them a right to a bond hearing:

> The [Department of Homeland Security] shall take into custody any alien who--
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title [which primarily governs admissibility of aliens convicted of an offense (including a conspiracy or attempt) involving moral turpitude or a controlled substance],
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii) [which governs deportability of aliens convicted of two or more crimes of moral turpitude], (A)(iii), (B), (C), or (D) of this title, [which primarily govern deportability of aliens convicted of aggravated felonies, crimes involving controlled substances or firearms, and certain other

---

[5] The statute confers authority on the Attorney General. 8 U.S.C. § 1226(a). However, the Attorney General's duties under the statute now belong to the Secretary of the Department of Homeland Security, see Straker, __ F. Supp. 2d at __, 2013 WL 6476889, at *4 (citing 6 U.S.C. §§ 202, 251, 557; Vazquez v. Holder, 602 F.3d 1003, 1006 (9th Cir. 2010); and United States v. Rios-Zamora, 153 F. App'x 517, 520-21 (10th Cir. 2005)), whose department includes Immigration and Customs Enforcement, Monter v. Gonzales, 430 F.3d 546, 548 n.1 (2d Cir. 2005) ("On March 1, 2003, the Immigration and Naturalization Service was reconstituted as the Bureau of Immigration and Customs Enforcement [] and the Bureau of U.S. Citizenship and Immigration Services, both within the Department of Homeland Security.").

crimes],

(C) is deportable . . . on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title [which govern admissibility and deportability of those involved in terrorist activity],

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (footnote omitted).  An alien otherwise subject to mandatory detention under section 1226(c)(1) may be released only in limited circumstances related to witness protection.  8 U.S.C. § 1226(c)(2).

   B.  Analysis

   Mr. Masih argues that the term "released" as used in section 1226(c) requires release from a custodial sentence imposed as a result of a conviction for the criminal conduct that makes the alien removable, and thus does not apply to him because he has not been "released" in this manner.[6]

   To determine the meaning of a provision of the INA, a court begins with the "statutory text, considering the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme."

_____

   [6] The Government does not dispute that the release making an alien eligible for mandatory detention must be from custody imposed in relation to the conduct that brings the alien within the ambit of section 1226(c) -- that is, conduct referred to in subsections (1)(A) through (D).  See Saysana v. Gillen, 590 F.3d 7, 14-15 (1st Cir. 2009); In re Garcia Arreola, 25 I. & N. Dec. 267, 271 (BIA 2010).

<u>Cruz-Miguel v. Holder</u>, 650 F.3d 189, 195 (2d Cir. 2011) (internal quotation marks omitted); <u>see also</u> <u>Castaneda v. Souza</u>, 952 F. Supp. 2d 307, 311 (D. Mass. 2013). "[W]here the [statute] clearly speaks to the point in question," that is the end of the inquiry. <u>Boluk v. Holder</u>, 642 F.3d 297, 301 (2d Cir. 2011) (internal quotation marks omitted). However, where a provision of the statute is ambiguous, a court must generally defer to "the BIA's published, precedential interpretations of the [INA]," if any, as long as they are reasonable. <u>Baraket v. Holder</u>, 632 F.3d 56, 58 (2d Cir. 2011); <u>see also</u> <u>Boluk</u>, 642 F.3d at 301.

Section 1226(c) does not define the term "released," which can be interpreted to mean release from any kind of custody -- pre-trial, post-conviction, or both. In light of this ambiguity, a court must look to the interpretation of the BIA, which has twice stated that the word "released" in section 1226(c)(1) can refer to release from pre-trial physical custody, thus subjecting to mandatory detention a covered alien who was released from custody preceding a conviction. <u>In re Kotliar</u>, 24 I. & N. Dec. 124, 125 (BIA 2007) ("[W]e have held that an alien who is released from criminal custody (including from an arrest preceding a conviction . . . )" is "subject to mandatory detention"); <u>In re West</u>, 22 I. & N. Dec. 1405, 1410 (BIA 2000) ("'Released' [in section 1226(c)(1)] . . . can [] refer to release from physical custody following arrest."). However, neither opinion engages in detailed analysis of the question, so they are of limited utility and do not merit deference on this issue. <u>See, e.g.</u>, <u>Straker</u>, __ F. Supp. 2d at __,

6

2013 WL 6476889, at *12 ("The BIA's decisions are particularly unworthy of deference, in that <u>West</u> contained little reasoning in support of its conclusion on this point, and <u>Kotliar</u> none."); <u>accord</u> <u>Lora v. Shanahan</u>, __ F. Supp. 2d __, __, 2014 WL 1673129, at *10-11 (S.D.N.Y. 2014).

<u>Straker</u> provides the most thorough and persuasive analysis of this question.  Examining the structure of section 1226(c), that opinion notes that the statute requires mandatory detention for an alien who has committed a covered offense -- that is, who has been convicted of such an offense -- "'<u>when</u> <u>the</u> <u>alien</u> <u>is</u> <u>released</u>.'" <u>Straker</u>, __ F. Supp. 2d at __, 2013 WL 6476889, at *10 (quoting 8 U.S.C. § 1226(c)(1)(B)).  Because "the four categories of aliens listed in § 1226(c)(1)(B) all refer to aliens who have been convicted of covered offenses," "[t]he statute's text [] naturally fits the paradigm in which the alien (1) is convicted of an offense enumerated in § 1226(c)(1)(B), (2) serves a prison sentence for such a conviction, and thereafter (3) is released" to the Department of Homeland Security.  <u>Id.</u>  Thus, the "when released" language cannot create a duty to detain upon release from pre-trial detention.  <u>See</u> <u>id.</u>; <u>accord</u> <u>Lora</u>, __ F. Supp. 2d at __, 2014 WL 1673129, at *11.

The Government contends that

<u>Straker</u>'s finding that if pre-conviction arrests may satisfy the release requirement, then 'a mere arrest for a qualifying offense' would trigger mandatory detention, is incorrect because it fails to recognize that the language of [section 1226(c)] also requires a <u>conviction</u> for a qualifying offense.  In other words, <u>Straker</u> rests on a flawed premise: an alien would not fall within the mandatory detention statute if he were not convicted of

> an offense under the provisions that render an alien
> removable based on a conviction.

(Respondents' Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Resp. Memo.") at 21). This misunderstands the argument. Because the provision requires mandatory detention of an alien when he is released from custody imposed in connection with the offense that makes him removable, it cannot be directed at pre-conviction release from such custody precisely because mandatory detention is premised on a conviction.

Straker also addresses a related question (not raised by the Government here): whether termination of non-physical custody -- such as at the conclusion of Mr. Masih's probation -- constitutes "release" subjecting a qualified alien to mandatory detention under section 1226(c). Finding the term "release" ambiguous, Straker defers to the BIA's interpretation of this question in In re West.[7] The analysis in In re West is entirely convincing. The BIA noted that the statute directs immigration officials to detain aliens subject to the provision "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. §

---

[7] The Government asserts that Straker is "internally inconsistent" because it defers to In re West's determination that a qualifying release must be from physical custody but rejects the opinion's assertion "that pre-conviction arrests can satisfy the 'release' requirement." (Resp. Memo. at 21). There is no inconsistency, internal or otherwise. No deference is due the first proposition because it is a largely unreasoned ipse dixit. The second determination, however, is the product of reasoned analysis. See In re West, 22 I. & N. Dec. at 1408-10; see also Straker, ___ F. Supp. 2d at ___, 2013 WL 6476889, at *13-15.

1226(c); In re West, 22 I. & N. Dec. at 1408. "The natural reading of the words 'released on' within the context of these clauses . . . suggests that Congress is referring to the release of an alien from a restrictive form of criminal custody involving physical restraint to a less restrictive form of criminal custody without physical restraint." In re West, 22 I. & N. Dec. at 1409. Similarly, the concluding clause invoking arrest and imprisonment indicates a return to physical custody. Id. Because the statute bookends the "release" at issue between prior physical custody and possible future physical custody, the mandatory duty to detain an alien is not triggered by "release from non-physical restraints." Straker, __ F. Supp. 2d at __, 2013 WL 6476889, at *15.

This interpretation also comports with congressional intent. Congress passed section 1226(c) to remedy difficulties in deporting criminal aliens and to address recidivism among deportable aliens who were released after criminal conviction. See Demore v. Kim, 538 U.S. 510, 518-20 (2003). The Government insists that "an interpretation [of section 1226(c)] that turns on the precise nature of an underlying sentence and periods of confinement -- rather than the nature of the underlying conviction -- [] runs contrary to the statute's purpose." (Resp. Memo. at 22). On the contrary, it merely (and sensibly) defers to the sentencing court's calculation of the risks involved, which include those factors about which Congress was concerned when it passed section 1226(c).

In sum, because Mr. Masih was not released from post-conviction physical custody, the Government is not authorized to

hold him in mandatory detention pursuant to section 1226(c).[8]

Conclusion

The petitioner's motion to amend the petition (docket no. 11) is granted.  The amended petition is conditionally granted, and the Government shall release Mr. Masih unless it accords him a bond hearing pursuant to 8 U.S.C. 1226(a) within 30 days of the date of this order.  The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.


                    SO ORDERED.

                    *James C. Francis IV*
                    JAMES C. FRANCIS IV
                    UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 19, 2014

---

[8] As to Mr. Masih's second argument, the BIA has held that an alien who has engaged in the criminal conduct described in section 1226(c)(1) is subject to mandatory detention even if he is not immediately taken into custody by immigration officials when released from criminal custody.  In re Rojas, 23 I. & N. Dec. 117 (BIA 2001).  The courts, however, are divided on this question, with many holding that if ICE fails to detain an alien promptly following his release from post-conviction custody, it loses the authority to do so under section 1226(c) and must provide him with a bond hearing.  See, e.g., Lora, __ F. Supp. 2d at __, 2014 WL 1673129, at *6-7 (noting disagreement among the district courts addressing this issue); Baquera v. Longshore, 948 F. Supp. 2d 1258, 1262-63 (D. Colo. 2013) (same); Johnson v. Orsino, 942 F. Supp. 2d 396, 404-05 (S.D.N.Y. 2013) (same); Valdez v. Terry, 874 F. Supp. 2d 1262, 1264 (D.N.M. 2012) (same).  In light of my determination that Mr. Masih is not subject to section 1226(c) because he has not been released from a custodial sentence, I need not reach this issue.

Copies mailed this date:

Michael Z. Goldman, Esq.
Law Offices of Michael Z. Goldman
875 6th Ave., Suite 2302
New York, NY 10001

Christopher Connolly, Esq.
Assistant United States Attorney
US Attorney's Office, SDNY
86 Chambers Street
New York, NY 10007